**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:** _____

**CLAUDIA P. HUMPHREY**,

     Plaintiff,

vs.

**BOARD OF TRUSTEES OF FLORIDA ATLANTIC UNIVERSITY a/k/a FLORIDA ATLANTIC UNIVERSITY**

     Defendant.

_____/

**COMPLAINT**

Plaintiff, Claudia P. Humphrey ("Plaintiff"), hereby sues Defendant, Board of Trustees of Florida Atlantic a/k/a Florida Atlantic University ("FAU"), and alleges as follows:

**Parties, Jurisdiction and Venue**

1.     The Court's jurisdiction is invoked pursuant to Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"). This is an action for damages alleging unlawful discrimination on the basis of race and national origin.

2.     The Plaintiff is a resident of Miami, Florida, and, at all times material to this action, was employed as a Legal Studies program coordinator by the Defendant. At all times pertinent hereto, Plaintiff is a member of protected class because of her race, national origin, and/or ethnicity.

3.     The Defendant Board of Trustee of Florida Atlantic University a/k/a Florida Atlantic University ("FAU") is a is the governing body of Florida Atlantic University, a public university with campuses in Palm Beach and Broward counties, including the main campus located at 777 Glades Road, Boca Raton, Florida 33431.

4.     On or about November 17, 2020, the FAU issued a notice of separation to the Plaintiff, whereby terminated the Plaintiff's employment as a member of its faculty and administration ("Notice of Termination").

5.     Venue is proper in this Court because Defendants' residence and principal place of business are in this County, the Defendants transact business in this County, the Defendants have subjected themselves to the jurisdiction of this Court and the laws governing the State of Florida, and the claims arose within this County.

### Factual Background

6.     On or about November 5, 2018, Plaintiff was hired by Defendant as the Legal Studies program (the "Program") coordinator for its School of Criminology and Criminal Justice (the "School") within its Florida Atlantic University College of Social Work and Criminal Justice (the "College").[1]

7.     At the time of the hiring, FAU was seeking to hire an attorney to act as the new coordinator for its Program since FAU's previous coordinators have not been attorneys.

---

[1] The Program's former coordinator, Ms. Magdalena Reindl-Radu, retired from said position on or about December 14, 2018, at which time Plaintiff transitioned into the new role as the Program's coordinator.

8.     At the time of FAU hiring the Plaintiff for its Program, Plaintiff was and continues to be a Florida licensed attorney in good standing with the Florida Bar.

9.     Furthermore, Plaintiff held and continues to hold a Paralegal certification since 2010, and she was an adjunct professor for both the paralegal associate degree and the bachelor's degree in supply change at Broward College from which she acquire a vast experience in D2L the online teaching platform used by the College.

10.    Plaintiff has written three (3) legal articles; The Effects of Obergefell in the Florida Constitution and Florida Statutes, The Voting Right Act: Discrimination and Exclusion of Minority Language Groups, The Transition of the LGBTQ to a Third Political Party. Two out of them has been published by the Florida Bar Public Interest Section – The Effects of Obergefell in the Florida Constitution and Florida Statutes – and, Anti-defamation League – The Voting Right Act: Discrimination and Exclusion of Minority Language Groups.

11.    On or about January 1, 2020, Ms. Wendy Guastaferro ("Wendy") commenced her role as the School's Interim Director. At all relevant times Wendy was the direct supervisor of Plaintiff.

12.    Prior to Wendy commencing her role as the School's interim director, Plaintiff and all who worked directly with Plaintiff, including all pervious FAU's official Director(s), and/or  Interim Director(s), had a very cooperative and cordial relationship.

13.     More importantly, Plaintiff's performance was rated "Exceptional" 5 for the annual appraisal for the year 2019 through 2020 for which Plaintiff was awarded with a one-time bonus of $4,000 dollars. In the same appraisal the previous School's director stated therein that "if there was a higher rank, I'd give [Plaintiff] the highest rank."

14.     On or about January 29, 2020, Plaintiff met with Wendy to brief her about the Program as Wendy was unfamiliar with the Program.

15.     Thereafter, on or about January 30, 2020, Plaintiff enrolled Wendy as a "teacher" role in Canvas.[2] Plaintiff designed 14 Program courses and moved the Program into the Canvas platform in order to communicate with all the students in the Program and deliver the courses. Plaintiff successfully completed the e-Certification *Designer/Facilitator Training Workshop* offered by Florida Atlantic University – Center For e-Learning to design programs in Canvas.

16.     Upon Wendy being enrolled by Plaintiff in Canvas, Wendy began receiving email notifications from Canvas on all of Plaintiff's announcements and/or communication with students in the Program.

17.     On or about March 18, 2020, Plaintiff began working from home following a directive from FAU due to the Covid-19 pandemic.

18.      Immediately thereafter, Wendy began expressing to Plaintiff during her virtual meetings with Plaintiff in multiple times that Plaintiff had poor

---

[2] Canvas is FAU's teaching platform. The Program is identified within Canvas with Shell No. 63210.

communication skills and that because of Plaintiff's accent, referring to Plaintiff's Hispanic accent, she was not able to understand Plaintiff.

19.    Furthermore, Wendy also expressed multiple times to Plaintiff that Plaintiff's emails "sounded very defensive." To the point that Wendy instructed Plaintiff on how to write and what to write. Plaintiff noticed that Wendy was progressively growing upset with her to such extreme that Plaintiff began to doubt herself with regards to her writing and verbal communications, something that was never an issue with anyone up until now with Wendy stepping into the role of interim director of the Program.

20.    Due to Plaintiff's concern with Wendy's behavior and expressions towards Plaintiff, Plaintiff brought to Wendy's attention that she was Colombian in order to remind her that English is not Plaintiff's first language.

21.    Wendy's response to Plaintiff's concern was that maybe *the issues were certain cultural differences between Wendy and Plaintiff*, for which Plaintiff asked Wendy what she meant by that comment. Wendy refrained from addressing Plaintiff's question regarding her comment.

22.    On or about July 1, 2020, Plaintiff advised Wendy that Plaintiff's student assistant was working up until July 9, 2020, and that Plaintiff would need to hire a student assistant replacement as it was an agreement with prior directors. In response to Plaintiff's advice, Wendy directed Plaintiff to hold off on hiring a student assistant replacement due to the University having a freeze on hiring.

23.     However, Plaintiff knew that Wendy's explanation was not accurate as the Program was a self-revenue program and there was enough money in Plaintiff's TAG-budget for a student assistant replacement.[3]

24.     Plaintiff's knowledge regarding Wendy's misinformation was corroborated by Gerald Clinton, the Assistant Dean of Finance and Administration ("Mr. Clinton") at the College via email, in which he stated that ". . . there was a freeze, but that they have been granting exceptions for people paid on soft money, like auxiliaries. [the Program] is self-sufficient . . . I think it will be ok . . . your student assistant is paid with your tag . . ." [emphasis added].

25.     Upon Mr. Clinton's permission, Plaintiff forwarded to Wendy the Assistant Dean's message in order to clarify the misinformation.

26.     Notwithstanding the Mr. Clinton's message, Wendy continued to insist that Plaintiff could not hire a new student assistant.

27.     Furthermore, Interim Dean Naelys Luna ("Dean Luna") delayed the process in hiring a new student assistant by not signing the approval of a management plan, as required according to Wendy, in a timely fashion.

28.     Meanwhile, Plaintiff was working completely by herself approximately 12 to 15 hours daily for almost three (3) months in order to keep up with the Program, as a result of Wendy and Dean Luna's delay in the hiring process for a new student assistant.

---

[3] The Program's Tag budget is identified as TAG001911 and had approximately $100,000+ in said budget.

29.    In  multiple  occasions  Plaintiff  pleaded  to  Wendy  that  she desperately  needed  help  as  Plaintiff's  health  and  condition  was  rapidly deteriorating.

30.    Due to Plaintiff's extreme stress and work related anxiety, Plaintiff further pleaded to Wendy, in her desperate need for the hiring of a new student assistant, to ask Dean Luna to approve a management plan for hiring a relative under the FAU's hiring process of relatives.

31.    Plaintiff's pleas went completely ignored by Wendy. The process for hiring a new assistant for the program was delayed for almost three (3) months, and during these months Wendy never provided Plaintiff with any assistance even  though  Plaintiff  asked  Wendy  many  times  to  have  someone  from  the School helping Plaintiff.  According to Wendy Dean Luna was too busy.

32.    During  those  three  (3)  months,  in  addition  to  her  contractual employment duties, Plaintiff performed all the clerical and secretarial duties assigned to her previous assistant without any extra compensation.  Clerical or secretarial  duties,  included  but  were  not  limited  to,  register  and  process students  applications,  deposit  to  the  cashier  office  at  FAU  all  the  checks received from the students, create manual transcripts for the students, create invoices to students, aid students to process their payment through the FAU's cash net market place, process refunds to students, register the student to their respective classes and/or courses, answer to at least one hundred (100) phone calls at day, reply to all incoming e-mails received through the FAU assistant's email.

33.     Plaintiff was working for FAU for twenty-fours (24) hours a day, seven days per week.

34.     Wendy's harassment conduct against Plaintiff started interference with Plaintiff's work performance as, due to the overloaded work, Plaintiff begun suffering from panic attacks, condition that Plaintiff communicated to Wendy, and Wendy ignored.

35.     Additionally, Plaintiff was diagnosed with extreme anxiety.

36.     In essence, Wendy and Dean Luna created a hostile environment with the hopes in causing Plaintiff to resign from her position.

37.     Since Plaintiff continued to work through the hurdles created by Wendy and Dean Luna, Wendy began to direct Plaintiff to do things, for which Plaintiff rightfully refused, in order to create the illusion of insubordination on Plaintiff's part and to justify the brining of a reprimand process.

38.     Among many things that Wendy did in pursuit of framing Plaintiff for insubordination, Wendy directed Plaintiff to do things that were against FAU's own policies and Student Handbook; distorted factual events; tampered with evidence; fabricated issues for things that were never an issue before; requested for Plaintiff to sign-off on approvals for employees that were not under Plaintiff's program; requested from Plaintiff to perform work related tasks while on Plaintiff's sick-day off; in an unusual practice would go against Plaintiff's independence and autonomy as per Plaintiff's job description, and; etc.

39.   Wendy consistently denied sick leave to Plaintiff without justification to the point that Plaintiff had to cancel the already scheduled medical tests and doctor appointments.

40.   On August 31, 2020, Wendy also called Plaintiff's former student assistant and asked her information about the program, about where to find information about the instructors of the program, and the students.

41.   Wendy's hostile, reckless, harassing, belittling, discriminatory and retaliatory behavior towards Plaintiff progressively worsened.

42.   On or about August 31, 2020, Plaintiff reported Wendy's behavior to Dean Luna. Plaintiff sent an email to Dean Luna and asked her to give her a telephone call. When Dean Luna called Plaintiff, Plaintiff informed her that Wendy was harassing her and was discriminating her due to her Hispanic accent.  In response Dean Luna said to Plaintiff that she did not want to hear anything about discrimination or harassing complains from Plaintiff's part, and that she did not have time for that.  Finally, Dean Luna asked Plaintiff to work it out with Wendy and to meet with her alone, and then hung up the phone on Plaintiff.

43.   Plaintiff met with Wendy on or about September 1, 2020, via Microsoft Teams, following Dean Luna's request to meet with Wendy first. Plaintiff thought that the purpose for the meeting  was in regards to Plaintiff's report of harassment against Wendy. To Plaintiff's surprise, the meeting was to address Plaintiff's "issue" of verbal and writing communicating skills,

particularly in the way Plaintiff communicated with Wendy, adjunct professors, and FAU's students.

44.    At the meeting Plaintiff felt discriminated because of Plaintiff's accent again and cultural background.

45.    Prior to Wendy starting to work at FAU, Plaintiff never had an issue with either her writing or verbal communication skills. Plaintiff had an excellent verbal communications concerning work-related matters with former supervisors, co-workers and students.

46.    On or about September 3, 2020, Plaintiff for a second time officially reported Wendy's behavior to Dean Luna via email following the instructions contained in Regulation 7.008 "Anti-discrimination and Anti-Harassment" of FAU, and pleaded for Dean Luna to intervene in the matter. Dean Luna's response to Plaintiff's plea was that she would look into it and would then get back to Plaintiff and Wendy.

47.    Dean Luna failed to report Wendy's actions and notify the Executive Director of the FAU-OEI about Plaintiff's report as mandated by FAU's Regulation 7.008 III, B (Anti-Discrimination and Anti-Harassment).

48.    FAU's Regulation 7.008 Anti-Harassment and Anti-Discrimination, III, B states that "*any University employee* [...] *who believes they have been harassed, discriminated or retaliated against* in violation of this Regulation *may report the facts and circumstance thereof to* [...] *College Dean* [Dean Luna] [...] *who in turn must notify the Executive Director* . . . ." [emphasis added].

49.     Dean Luna in essence covered up Wendy's behavior towards Plaintiff by failing to notify the Executive Director of the FAU-OEI of Plaintiff's August 31, 2020 and September 3, 2020 reports.

50.     On or about September 9, 2020, Dean Luna emailed Plaintiff that she will scheduled a meeting to discuss Plaintiff's harassment claim against Wendy.

51.     On or about September 14, 2020 Dean Luna emailed Plaintiff that she was canceling the meeting and that she had instructed Wendy, the alleged harasser, to schedule a new meeting on a date what will be notified to Plaintiff.

52.     From September 14, 2020 to November 17, 2020 Dean Luna failed to comply with her duty of notifying the EOI executive director of my harassment report on August 31, and September 3, 2020.

53.     On or about October 5, 2020, without including Plaintiff's participation in the interview process, Wendy finally hired a new assistant for Plaintiff, taking away Plaintiff's independence and autonomy into hiring her own assistant.

54.     Wendy began to grant the new assistant the ability to delegate tasks and make management decision that only fell under the realm of the Legal Studies Program Coordinator, thus altering the nature of Plaintiff's job description.

55.     Plaintiff expressed to Wendy that the new powers that she had granted to the new assistant was not included in her job description as OPS part-time employee and that her directive had altered the nature of the Legal

Studies Program Coordinator's job position as classified as an AMP, Administrative Exemption, which has among its essential and distinctive characteristics "the exercise of discretion and independent judgment with respect to matters of significance."

56.    On or about October 22, 2020, Dean Luna and Wendy lured Plaintiff into a virtual meeting via Microsoft Teams making Plaintiff believe that the meeting was related to Plaintiff's harassment claim against Wendy. Nothing related to Plaintiff's complaint on Wendy's behavior was discussed in said meeting, but rather a letter of reprimand issued by Dean Luna and Wendy based on falsehood, riddled with groundless and meritless accusations.

57.    On or about October 23, 2020, Wendy emailed Plaintiff the letter of reprimand ordering Plaintiff to sign and return it back to her in violation of FAU's Regulation 5.012, numeral 7, whereby it states ". . . notices given under this Regulation shall be *hand-delivered* or *sent "return receipt requested" to the employee's address of record with the University* . . ." [emphasis added].

58.    It is worth noting that during eight (8) months prior to Plaintiff's complain brought against Wendy before Dean Luna, Wendy never complaint against Plaintiff's performance and/or Plaintiff's Canvas announcements. It was only after the Plaintiff reported Wendy's harassment conduct against Wendy, is when Wendy commenced to retaliate against Plaintiff.

59.    Dean Luna's incompetence in failing to intervene to stop Wendy's behavior towards Plaintiff and to notify the Executive Director of the FAU-OEI

of Plaintiff's August 31, 2020 and September 3, 2020 reports, contributed in enabling Wendy's behavior to persist against Plaintiff.

60.    In essence, it appeared as Wendy had Dean Luna's blessing to continue her behavior towards Plaintiff.

61.    When Plaintiff would put her request for approval on her right to exercise her vacation and/or sick days, Wendy would place contingencies on the approval by, including but not limited to, creating a list of tasks that Plaintiff would have to complete before obtaining approval. Furthermore, Wendy would also impose duties on Plaintiff for while Plaintiff was on leave.

62.    Wendy was well aware of Plaintiff's need for taking leave for self-care and because of Plaintiff's need Wendy exploited it as shown by her behavior towards Plaintiff.

63.    Wendy also denied Plaintiff's request for a work cellular phone. These work cellular phones were provided by FAU to its employee's and paid for by FAU as well. Due to Wendy's denial of Plaintiff's request, Plaintiff was forced to continue using her personal cell phone in accomplishing her work with FAU's Program.

64.    Furthermore, Wendy mentioned to Plaintiff that she had discussed the request with Dean Luna and that Dean Luna's position was that Plaintiff had to start working from campus again even though nobody within the School was working at that time on campus and everybody within the School still was working from home, due to the Covid-19.

65.     The complicit behavior of Wendy and Dean Luna towards Plaintiff is further demonstrated with manipulating Plaintiff to work from the office in the middle of a devastating pandemic well knowing that no one was working in Building SO (44) where the College has its headquarters.

66.     On or about October 27, 2020, Plaintiff filed her first Grievance against Dean Luna as per FAU's Regulation 5.009 Grievance Procedure for the failure to report Plaintiff's claims in violation of FAU's Regulation 7.008 Anti-Harassment and Anti-Discrimination, III, B.

67.     It is Plaintiff's believe that no disciplinary action has ever been taken against Dean Luna for her failures to report Plaintiff's claims as FAU's Regulation 7.008 Part III, A, 1 dictates in stating "who receives a report [...] of an alleged violation of this Regulation has an absolute and unqualified duty to promptly report the conduct to OEI. Failure to report an alleged violation as required by this Regulation may result in disciplinary action."

68.     The Step One Representative who was assigned to preside over Plaintiff's Grievance Procedure was Dean Edward Pratt ("Dean Pratt"), whom was an equal and colleague of Dean Luna.

69.     On or about November 2, 2020, Plaintiff received in the mail via return receipt requested as per FAU's Regulation 5.012, numeral 7, the letter of reprimand signed by both, Dean Luna and Wendy.

70.     On or about November 3. 2020, Plaintiff's Grievance was heard before Dean Pratt and Ms. Gabrielle Zaidman ("Ms. Zaidman"), whom is the Employee Relations and Development's manager at FAU's Human Resources

and who advised Plaintiff that she could file a grievance as per FAU's Regulation 5.009 Grievance Procedure.

71.     Due to Plaintiff's concern as to how FAU's higher-ups were covering for each other, Plaintiff asked Dean Pratt and Ms. Zaidman on whether the Grievance hearing was going to be recorded in order to obtain an accurate transcript. Their response to Plaintiff's question was that FAU does not record Grievance hearings and that Plaintiff can take notes as they would be doing as well.

72.     On or about November 5, 2020, Dean Pratt issued his decision on Plaintiff's Grievance, stating that Plaintiff's claim against Dean Luna was time-barred and that he did not find any evidence that Wendy had created a hostile environment. Thus, Plaintiff's Grievance was dismissed by Dean Pratt.

73.     Dean Pratt also failed to report Plaintiff's claims to FAU's OEI Executive Director in violation of FAU's Regulation 7.008 and Regulation Part III, A, 1.

74.     In essence, Dean Pratt's dismissal of Plaintiff's Grievance and his failure to report Plaintiff's claims to FAU's OEI Executive Director further goes to show that Dean Pratt served as an accomplice and cover up for both, Wendy's and Dean Luna's behavior towards Plaintiff.

75.     Furthermore, Dean Pratt referred to statements in his decision that Plaintiff never made during the Grievance hearing and accused Plaintiff of things that were not correct.

76.     Moreover, Dean Pratt abused his power as Dean by threatening Plaintiff in his decision by stating "moving forward, I hope that you will carefully consider the ramifications of your actions." Even though Plaintiff presented all of her supportive evidence and accurately described the facts stated in her Grievance.

77.     On or about November 12, 2020, Plaintiff filed an appeal on Dean Pratt's decision. Thus, moving Plaintiff's Grievance to Step Two Representative as per FAU's Regulation 5.009 Grievance Procedure.

78.     Thereafter, FAU denied Plaintiff's opportunity to have her appeal heard before the Step Two Representative.

79.     On or about November 1, 2020, while Plaintiff was preparing and gathering all of her supportive evidence in order to show clear proof of how Plaintiff interacted with her students in direct contradiction of how Wendy presented it, Plaintiff discovered that someone had maliciously deleted more than 160 announcements that Plaintiff had published in Canvas, which constituted Plaintiff's communication with all of her students for the Program. Plaintiff immediately contacted Carlos Dominguez, LMS Support Services and Training – Instructional Technologies Team staff, via Microsoft Teams and email requesting him to immediately investigate the destruction of said evidence.

80.     On or about November 5, 2020, Plaintiff filed another Grievance this time against Wendy's letter of reprimand as Plaintiff had evidence showing

that it was a product of retaliation against Plaintiff due to Plaintiff reporting her behavior to Dean Luna.

81.  To Plaintiff's surprise, Dean Pratt was once again assigned as the Step One Representative to Plaintiff's Grievance.

82.  On or about November 6, 2020, Plaintiff filed a harassment and retaliation charge against FAU with the Equal Employment Opportunity Commission (EEOC).

83.  On or about November 13, 2020, Plaintiff had her second Grievance heard before Dean Pratt.

84.  Dean Pratt never issued a decision on Plaintiff's second Grievance.

85.  In turn, on or about November 17, 2020, FAU sent Plaintiff a notice of separation signed by both, Dean Luna and Wendy.

86.  On the same day, Ms. Zaidman further requested to meet with Plaintiff via Microsoft Teams in order to go over a couple of things with Plaintiff and that the meeting would not involve Dean Pratt as it was a Human Resources meeting.

87.  Once in the meeting, to Plaintiff's shocking surprise, Wendy was participating in the meeting in total ambush by Ms. Zaidman solely to afford Wendy the opportunity to hear her read out to Plaintiff the notice of termination in furtherance of humiliating, harassing, and retaliating against Plaintiff.

88.  Even more shocking to Plaintiff, that while Ms. Zaidman was reading the notice of termination to Plaintiff, Wendy was laughing offensively,

in ridicule, and mockery, further showing her satisfaction to the end result she orchestrated.

89.    Ms. Zaidman's actions and her failure to report Plaintiff's claims to FAU's OEI Executive Director further goes to show that Ms. Zaidman also served as an accomplice and cover up for Wendy's, Dean Luna's, and Dean Pratt's behavior towards Plaintiff.

90.    FAU failed to prevent and/or correct the harassment behavior herein described.

91.    It is Plaintiff's belief that two other FAU employees, one an African American male and another Hispanic female, at the School of Criminology and Criminal Justice were harassed by Wendy.

92.    Defendant's conduct has caused damages to Plaintiff.

93.    Plaintiff retained the legal services of undersigned counsel for representation in this action and is obligated to pay reasonable fees for its legal services.

94.    All conditions precedent to this lawsuit have occurred, been filed or have been waived.

**COUNT I**
**RACE DISCRIMINATION**
**(Violation of 42 U.S.C. § 2000e-2(a)(1))**

95.    Plaintiff adopts and re-alleges the allegations set forth in Paragraphs 1 to 94 above as if fully set forth herein.

96.    Plaintiff is a member of the protected class.

97.     FAU's acts, discrimination, negligence, omissions, and conduct, as alleged herein affected Plaintiff's terms, conditions, or privilege of employment with FAU and said discriminatory actions were because of Plaintiff's race and/or national origin.

98.     Plaintiff was forced to work long hours per day including weekends, without additional pay, and without a student assistant. Additionally, FAU failed to assign a work-phone to Plaintiff, forcing Plaintiff to use her personal cellphone to continue perform her job duties. These work cellular phones were provided by FAU to its employee's and paid for by FAU as well.

99.     Wendy's remarks regarding Plaintiff's Hispanic accent and national origin were constant and embarrassing to Plaintiff.

100.    Plaintiff's race, Hispanic, was a determining factor in the Defendant's decision to terminate the Plaintiff's employment. The Defendant's conduct violates 42 U.S.C. § 2000e-2(a)(1).

101.    As a result of the Defendant's unlawful conduct, as described herein, the Plaintiff has suffered, and continues to suffer, a loss of income and a loss of the value of benefits she would have received had she continued in the Defendant's employ. In addition, the Plaintiff has suffered, and continues to suffer, mental anguish, emotional distress, embarrassment and damage to her personal and professional reputation.

102.    Plaintiff has complied with all the procedural prerequisites to bringing this action. Specifically, the Plaintiff's timely filed a Charge of

Discrimination with the United States Equal Employment Opportunities Commission (EEOC). This action is filed within 90 days of Plaintiff receipt of a notice of right to sue from the EEOC.

**WHEREFORE**, the Plaintiff prays:

(a) That the Court take jurisdiction over this action;

(b) That the Court award the Plaintiff her lost pay and the value of her lost benefits;

(c) That the Court award the Plaintiff compensatory damages; and,

(d) That the Court award the Plaintiff the cost of this action, including a reasonable attorney's fee.

**COUNT II**
**NATIONAL ORIGIN DISCRIMINATION**
**(Violation of 42 U.S.C. § 2000e-2(a)(1))**

103. Plaintiff adopts and re-alleges the allegations set forth in Paragraphs 1 to 94 above as if fully set forth herein.

104. Plaintiff is a member of the protected class.

105. FAU's acts, discrimination, negligence, omissions, and conduct, as alleged herein affected Plaintiff's terms, conditions, or privilege of employment with FAU and said discriminatory actions were because of Plaintiff's race and/or national origin.

106. Plaintiff was forced to work long hours per day including weekends, without additional pay, and without a student assistant. Additionally, FAU failed to assign a work-phone to Plaintiff, forcing Plaintiff to use her personal cellphone to continue perform her job duties. These work

cellular phones were provided by FAU to its employee's and paid for by FAU as well.

107.   Wendy's remarks regarding Plaintiff's Hispanic accent and national origin were constant and embarrassing to Plaintiff.

108.   The Plaintiff's national origin, Colombian, was a determining factor in the Defendant's decision to terminate the Plaintiff's employment. The Defendant's conduct violates 42 U.S.C. § 2000e-2(a)(1).

109.   As a result of the Defendant's unlawful conduct, as described in herein, the Plaintiff has suffered, and continues to suffer, a loss of income and a loss of the value of benefits she would have received had she continued in the Defendant's employ. In addition, the Plaintiff has suffered, and continues to suffer, mental anguish, emotional distress, embarrassment and damage to her personal and professional reputation.

110.   The Plaintiff has complied with all the procedural prerequisites to bringing this action. Specifically, the Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunities Commission (EEOC) and initiated this action within 90 days of her receipt of a notice of right to sue from the EEOC.

**WHEREFORE**, the Plaintiff prays:

(a) That the Court take jurisdiction over this action;

(b) That the Court award the Plaintiff her lost pay and the value of her lost benefits;

(c) That the Court award the Plaintiff compensatory damages; and,

(d) That the Court award the Plaintiff the cost of this action, including a reasonable attorney's fee.

**COUNT III**
**UNLAWFUL RETALIATORY DISCHARGE**
**(Title VII)**

111.   Plaintiff adopts and re-alleges the allegations set forth in Paragraphs 1 to 94 above as if fully set forth herein.

112.   FAU's acts, discrimination, negligence, omissions, and conduct, as alleged herein, invoke one or more of the activities enumerated under Section Title VII.

113.   On or about August 31, 2020, and September 3, 2020, Plaintiff reported to Dean Luna some discriminatory and harassment behavior Plaintiff have received from Wendy. Plaintiff's reported said in accordance to FAU's employment policies and pursuant to state and federal laws prohibiting discrimination and harassment.

114.   Following his complaints against Wendy, Plaintiff was subjected to retaliation, targeted for termination, and then ultimately terminated.

115.   Dean Luna failed to report Wendy's discriminatory and harassment actions against Plaintiff as mandated by FAU's Regulation 7.008, and thereafter Plaintiff filed a grievance against Dean Luna and Wendy, for failure to follow the FAU's Regulations, and discriminatory conduct, respectfully.

116.   On November 5, 2020, FAU ruled on Plaintiff's grievance and found no evidence of any discriminatory actions against Plaintiff. Moreover, in its

decision, FAU attempts to cover up for both, Wendy's and Dean Luna's behavior towards Plaintiff.

117.   Based on FAU's failure to provide a work place to Plaintiff free from any hostile and discriminatory environment, on or about November 6, 2020, Plaintiff filed a harassment and retaliation charge against FAU with the EEOC.

118.   Following Plaintiff's complaints and in retaliation for those complaints the FAU engaged in adverse action against Plaintiff.

119.   In particular, FAU terminated Plaintiff on November 17, 2020.

120.   As result of the aforesaid conduct, FAU has violated the Title VII.

121.   As a result of the Defendant's unlawful conduct, as described in herein, the Plaintiff has suffered, and continues to suffer, a loss of income and a loss of the value of benefits she would have received had she continued in the Defendant's employ. In addition, the Plaintiff has suffered, and continues to suffer, mental anguish, emotional distress, embarrassment and damage to her personal and professional reputation.

122.   The Plaintiff has complied with all the procedural prerequisites to bringing this action. Specifically, the Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunities Commission (EEOC) and initiated this action within 90 days of her receipt of a notice of right to sue from the EEOC. See Exhibit A.

**WHEREFORE**, the Plaintiff prays:

(e) That the Court take jurisdiction over this action;

(f)  That the Court award the Plaintiff her lost pay and the value of her lost benefits;

(g)  That the Court award the Plaintiff compensatory damages;

(h)  Prejudgment interests, and,

(i)  That the Court awards the Plaintiff the cost of this action, including a reasonable attorney's fee.

**COUNT IV**
**UNLAWFUL RETALIATORY DISCHARGE**
**(Section 1981)**

123.  Plaintiff adopts and re-alleges the allegations set forth in Paragraphs 1 to 94 above as if fully set forth herein.

124.  FAU's acts, discrimination, negligence, omissions, and conduct, as alleged herein, invoke one or more of the activities enumerated under Section 1981.

125.  On or about August 31, 2020, and September 3, 2020, Plaintiff reported to Dean Luna some discriminatory and harassment behavior Plaintiff have received from Wendy. Plaintiff's reported said in accordance to FAU's employment policies and pursuant to state and federal laws prohibiting discrimination and harassment.

126.  Following his complaints against Wendy, Plaintiff was subjected to retaliation, targeted for termination, and then ultimately terminated.

127.  Dean Luna failed to report Wendy's discriminatory and harassment actions against Plaintiff as mandated by FAU's Regulation 7.008, and

thereafter Plaintiff filed a grievance against Dean Luna and Wendy, for failure to follow the FAU's Regulations, and discriminatory conduct, respectfully.

128. On November 5, 2020, FAU ruled on Plaintiff's grievance and found no evidence of any discriminatory actions against Plaintiff. Moreover, in its decision, FAU attempts to cover up for both, Wendy's and Dean Luna's behavior towards Plaintiff.

129. Based on FAU's failure to provide a work place to Plaintiff free from any hostile and discriminatory environment, on or about November 6, 2020, Plaintiff filed a harassment and retaliation charge against FAU with the EEOC.

130. Following Plaintiff's complaints and in retaliation for those complaints the FAU engaged in adverse action against Plaintiff.

131. In particular, FAU terminated Plaintiff on November 17, 2020.

132. As result of the aforesaid conduct, FAU has violated Section 1981.

133. As a result of the Defendant's unlawful conduct, as described herein, the Plaintiff has suffered, and continues to suffer, a loss of income and a loss of the value of benefits she would have received had she continued in the Defendant's employ. In addition, the Plaintiff has suffered, and continues to suffer, mental anguish, emotional distress, embarrassment and damage to her personal and professional reputation.

134. The Plaintiff has complied with all the procedural prerequisites to bringing this action. Specifically, the Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunities

Commission (EEOC) and initiated this action within 90 days of her receipt of a notice of right to sue from the EEOC.

**WHEREFORE**, the Plaintiff prays:

(j)  That the Court take jurisdiction over this action;

(k) That the Court award the Plaintiff her lost pay and the value of her lost benefits;

(l)  That the Court award the Plaintiff compensatory damages;

(m)     Prejudgment interests, and,

(n) That the Court award the Plaintiff the cost of this action, including a reasonable attorney's fee.

**COUNT V**
**UNLAWFUL HARASSMENT**
**(Title VII)**

135.  Plaintiff adopts and re-alleges the allegations set forth in Paragraphs 1 to 94 above as if fully set forth herein.

136.  Plaintiff is a member of the protected class.

137.  Plaintiff's race – Hispanic – and/or national origin - Colombia, was a determining factor in the Defendant's decision to terminate the Plaintiff's employment.

138.  Plaintiff was subjected to unwelcome harassment by Defendant.

139.  Wendy's remarks regarding Plaintiff's Hispanic accent and national origin were constant and embarrassing to Plaintiff.

140.  Plaintiff was forced to work long hours per day including weekends, without additional pay, and without a student assistant.

Additionally, FAU failed to assign a work-phone to Plaintiff, forcing Plaintiff to use her personal cellphone to continue perform her job duties. These work cellular phones were provided by FAU to its employee's and paid for by FAU as well.

141.  FAU's offensive behavior was severe and/or pervasive enough to create a work environment that a reasonable employee would consider to be intimidating, hostile, and/or abusive.

142.  The harassment Plaintiff complained about was based on Plaintiff's race – Hispanic – and/or national origin – Colombian.

143.  FAU knew or should have known of the harassment against Plaintiff and Defendant failed to take prompt remedial action.

144.  As a result of the Defendant's unlawful conduct, as described herein, the Plaintiff has suffered, and continues to suffer, a loss of income and a loss of the value of benefits she would have received had she continued in the Defendant's employ. In addition, the Plaintiff has suffered, and continues to suffer, mental anguish, emotional distress, embarrassment and damage to her personal and professional reputation.

145.  The Plaintiff has complied with all the procedural prerequisites to bringing this action. Specifically, the Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunities Commission (EEOC) and initiated this action within 90 days of her receipt of a notice of right to sue from the EEOC.

**WHEREFORE**, the Plaintiff prays:

(e) That the Court take jurisdiction over this action;

(f) That the Court award the Plaintiff her lost pay and the value of her lost benefits;

(g) That the Court award the Plaintiff compensatory damages; and,

(h) That the Court award the Plaintiff the cost of this action, including a reasonable attorney's fee.

### JURY TRIAL

Plaintiff hereby requests a trial by jury with respect to all claims so triable.

Respectfully submitted on June 07, 2021.

**ARGUEZ HIRSCH PLLC**
12555 Orange Drive
Second Floor
Davie, Florida 33330
Phone: (954) 237-6060
Service email: eservice@arguezhirsch.com
*Counsel for Plaintiff*

**By:** ___ **/s/ *Yenys Hirsch*** ___
Yenys Hirsch, Esq.
FL Bar No. 118260
yenys.hirsch@arguezhirsch.com
Michael Jr. Arguez, Esq.
FL Bar No. 123483
michael.arguez@arguezhirsch.com

EEOC Form 161 (11/2020)                   U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:    **Claudia P. Humphrey, Esq.**<br>**6765 Miami Lakes Dr.**<br>**Miami Lakes, FL 33014** | From:   **Miami District Office**<br>**Miami Tower, 100 S E 2nd Street**<br>**Suite 1500**<br>**Miami, FL 33131** |

|    | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2021-00763** | **MICHAEL S. MATHELIER,**<br>**Investigator** | **(786) 648-5853** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|   |   |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Marissa Cosculluela
Digitally signed by Marissa Cosculluela
DN: cn=Marissa Cosculluela, o, ou=EEOC - Miami District
Office, email=Marissa.Cosculluela@eeoc.gov, c=US
Date: 2021.03.09 06:48:56 -05'00'

                                                                          03/09/2021

Enclosures(s)                          For:    **Paul Valenti,**                          *(Date Issued)*
                                               **District Director**

cc:      **Ruba Kanaan, Executive Director**
         **FLORIDA ATLANTIC UNIVERSITY**
         **Office of Equity and Inclusion**
         **777 GLADES RD**
         **Boca Raton, FL 33431**

# EXHIBIT A

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EXHIBIT A

Enclosures(s)

cc:

**EXHIBIT A**